## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CORONA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 04-CV-5680 |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
| Defendant. | : | |

**Anita B. Brody, J.**                                              **May  10, 2006**

### MEMORANDUM AND ORDER

_____John R. Corona ("Plaintiff") sought judicial review, pursuant to 42 U.S.C. § 405(g), of

the final decision of the Commissioner of Social Security ("Commissioner") denying his claim

for disability insurance benefits ("DIB") and supplemental security income ("SSI") under

Titles II and XVI, respectively, of the Social Security Act, 42 U. S. C. §§ 401 and 1381 <u>et seq</u>.

The parties filed cross-motions for summary judgment, and the case was sent to United States

Magistrate Judge Carol Sandra Moore Wells for a Report and Recommendation ("R&R").  Judge

Wells recommended that Plaintiff's summary judgment motion be granted in part and denied in

part, and that the case be remanded to the Commissioner for further proceedings.  The

Commissioner did not file any objections to the R&R, and in an Order of November 30, 2005, I

approved and adopted the R&R and remanded the case to the Commissioner.  Currently before

me is Plaintiff's application for attorney's fees under the Equal Access to Justice Act (the

"EAJA"), 28 U.S.C. § 2412, which allows the award of reasonable attorney's fees to a prevailing

party other than the United States in, *inter alia*, social security appeals brought under 405(g).

See Shalala v. Schaefer, 509 U.S. 292 (1993).  For the reasons set forth below, I will grant

Plaintiff's application for fees.


# I. FACTS AND PROCEDURAL HISTORY

## A. *The ALJ's Decision*[1]

Plaintiff filed for SSI and DIB benefits on April 15 and May 6, 2003, respectively,

alleging disability as a result of bipolar disorder, high blood pressure, and diabetes.  The

applications were denied on September 12, 2003.  Plaintiff had an administrative hearing on

March 17, 2004 before Administrative Law Judge ("ALJ") Margaret A. Lenzi, at which he was

represented by counsel.  Plaintiff and a vocational expert ("VE") testified at this hearing.  On

July 27, 2004, the ALJ found Plaintiff ineligible for benefits.  Although the ALJ found that

Plaintiff suffered from severe impairments, she concluded that Plaintiff's combination of

impairments did not prevent him from performing his past relevant work or a limited range of

alternative work.

Using the five-step sequential evaluation process described at 20 C.F.R. §§ 404.1520(b)-

(f) and 416.920(b)-(f), the ALJ found that:  (1) Plaintiff had not engaged in substantial gainful

activity after the onset date of his disability; (2) Plaintiff had severe impairments, consisting of

diabetes mellitus with peripheral neuropathy[2] in both legs, left elbow tenderness and lateral

---

[1] I recite the underlying facts and procedural history of the case as stated in the R&R, to which neither party filed objections and which I subsequently approved and adopted.

[2] Peripheral neuropathy is "a failure of the nerves that carry information to and from the brain and spinal cord.  This produces pain, loss of sensation, and inability to control muscles." (R&R at 2 n.4.)

2

epicondylitis,[3] hypertension, and depression; (3) however, Plaintiff did not have an impairment that met or medically equaled a listing in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) Plaintiff had the residual functional capacity ("RFC") to perform his past work as a toll collector, as actually performed; and (5) according to the testimony of the VE, an individual of Plaintiff's age, education, past relevant work history and functional limitations could perform a limited range of other simple light work. Accordingly, the ALJ found Plaintiff ineligible for either disability or SSI. The Appeals Council declined Plaintiff's request for review, and the Plaintiff sought judicial review in this Court under 42 U.S.C. § 405(g).[4]

## B. *Judge Wells's R&R*

The parties filed cross motions for summary judgment. Plaintiff argued that in denying his claim, the ALJ had erred by failing to give proper weight to the testimony of Plaintiff and his treating physicians, failing to obtain additional medical expert testimony on whether a combination of Plaintiff's impairments met or equaled a listed impairment, and failing to include all of Plaintiff's impairments in a hypothetical question posed to the VE.[5]

---

[3] Epicondylitis, "tennis elbow," is "an inflammation, soreness, or pain on the outside (lateral) side of the upper arm near the elbow." (R&R at 2 n.5.)

[4] Section 405(g) provides, in part: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . ."

[5] "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). In this case, the ALJ relied on the VE's answers to hypotheticals in determining that Plaintiff still had the capacity to do certain jobs. (R.27.)

The case was referred to Magistrate Judge Wells for a Report and Recommendation pursuant to the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B).[6]  On October 31, 2005, Magistrate Judge Wells issued an R&R recommending that the Plaintiff's motion be granted in part and denied in part and that the case be remanded to the Commissioner for additional factual findings.  Applying the substantial evidence standard,[7] Judge Wells found that the ALJ had erred in several respects and that her decision was not supported by substantial evidence.  She found that the ALJ had failed to address how the side effects of Plaintiff's medications would affect his ability to work, contrary to Third Circuit law.[8]  In addition, Judge Wells found that the VE's answer to the ALJ's hypothetical question could not constitute substantial evidence because the hypothetical did not include all of Plaintiff's mental and physical impairments, contrary to Third Circuit precedent and Social Security regulations.  As to Plaintiff's other claims of error, Judge Wells found that the ALJ had given the opinions of Plaintiff's treating physicians the proper weight on the question of whether Plaintiff's impairments met or equaled a listed impairment, and that the ALJ was not required to seek additional medical expert testimony on this issue.

---

[6] Section 636(b)(1)(B) provides, in part, that "a judge may . . . designate a magistrate judge . . . to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)," which includes motions for summary judgment.

[7] See 42 U.S.C. § 405(g) (Commissioner's findings of fact shall be conclusive if supported by substantial evidence).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

[8] Although the parties do not appear to have specifically addressed whether the ALJ properly considered the side effects of Plaintiff's medications, in determining whether substantial evidence supports the ALJ's decision, a court examines the administrative record as a whole. See McRea v. Commissioner, 370 F.3d 357, 360-61 (3d Cir. 2004).

Accordingly, Judge Wells recommended granting the Plaintiff's motion for summary judgment in part and remanding the case to the Commissioner to: (1) consider alleged side effects and/or vocational consequences of Plaintiff's medications and any relevant limitations, (2) investigate and document the responsibilities of Plaintiff's past relevant work, and if necessary, submit to a vocational expert a complete and accurate hypothetical containing all of Plaintiff's legitimate significant physical and mental limitations, as well as a revised Residual Functional Capacity Assessment, to determine what positions, if any, Plaintiff could perform in the national and regional economy. Neither Plaintiff nor the Commissioner filed any objections to the R&R within the time provided for doing so, and on November 30, 2005, I approved and adopted the R&R and remanded the case.[9]

## C. *Plaintiff's Application for Attorney's Fees under the EAJA*

On December 2, 2005, Plaintiff filed an application for attorney's fees under the Equal

---

[9] Although it has "recognized that the majority of circuits hold otherwise," the Third Circuit has held that "a party who failed to object to a magistrate's report on an issue referred under subsection (B) [of the Magistrates Act] has not waived its right to [appeal] the legal conclusions contained therein." United Steelworkers of Am. v. N.J. Zinc Co., Inc., 828 F.2d 1001, 1006 (3d Cir. 1987). Thus I cannot, as I might like, ascribe significance to the Commissioner's failure to file any objections to the magistrate's recommendation that this case be remanded. Surprisingly, although ultimately choosing not to appeal, the Commissioner could have still appealed the remand to the Court of Appeals even without objecting to the R&R. See Henderson v. Carlson, 812 F.2d 874 878-79 (3d Cir. 1987).

As a district court judge who has had the privilege of sitting on the Third Circuit by designation, I wish to modestly suggest that this rule be reconsidered. In my opinion, it unnecessarily increases the caseload of an extremely overburdened Third Circuit while "stripp[ing] the district court of its function of effectively reviewing the magistrate's order . . . and frustrat[ing] the policy behind the Magistrate's Act, i.e., to relieve courts of unnecessary work and to improve access to the courts." Steelworkers, 828 F.2d at 1007 (quoting Niehaus v. Kansas Bar Assoc., 793 F.2d 1159, 1165 (10th Cir. 1986)). The Third Circuit already requires parties to object to magistrate's decisions on matters referred under subsection (A) or forfeit the right to appeal. See id. at 1006. A similar rule with respect to subsection (B) referrals, if applied with some leniency in *pro se* cases, would serve the interests of justice.

Access to Justice Act in connection with his successful challenge to the ALJ's decision in this

Court.  As required by the EAJA, Plaintiff attached an affidavit of his attorney stating that he had

spent 24.1 hours of time in the preparation and prosecution of Plaintiff's case at a rate of $160.10

per hour for a total of $3,858.41, and providing a detailed accounting of the time spent.  28

U.S.C. § 2412(d)(1)(B).  The Commissioner submitted a brief arguing that fees were unavailable

under the EAJA because the Commissioner's position was "substantially justified," 24 U.S.C. §

2412(d)(1)(A), to which Plaintiff submitted a reply.


## II. LEGAL STANDARD

The Equal Access to Justice Act provides, in part:

> Except as otherwise specifically provided by statute, a court shall award to a
> prevailing party other than the United States fees and other expenses . . . incurred
> by that party in any civil action . . . including proceedings for judicial review of
> agency action, brought by or against the United States in any court having
> jurisdiction of that action, unless the court finds that the position of the United
> States was substantially justified or that special circumstances make an award
> unjust.

28 U.S.C. § 2412(d)(1)(A).  By providing that a court "*shall* award" attorney's fees unless certain

exceptions apply, the EAJA makes mandatory the award of attorney's fees to a qualified

prevailing party.  See Allen v. Bowen, 821 F.2d 963, 964 (3d Cir. 1987).

The parties do not dispute that my November 30, 2005 Order remanding the case

rendered the Plaintiff a "prevailing party" under the EAJA.  See generally Schaefer, 509 U.S. at

292 (social security/disability claimant can obtain EAJA attorney fee award for achieving remand

of case to Commissioner).  Nor does the Commissioner argue any "special circumstances" that

would "make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Thus, the only question before me

is whether the Commissioner's position was "substantially justified" so as to preclude an award of fees.

In EAJA litigation, the government bears the burden of establishing that there was substantial justification for its position.  Morgan v. Perry, 142 F.3d 670, 684 (3d Cir. 1998).  The government's "position" includes not only the position taken in the litigation but the position that made the litigation necessary in the first place.  Id.  The Supreme Court has stated that "substantially justified" means

> . . . not 'justified to a high degree,' but rather 'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.  To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

Pierce v. Underwood, 487 U.S. 552, 565-566 (1988) (citations omitted); see also Edge v. Schweiker, 814 F.2d 125, 128 (3d Cir. 1987) ("Substantial justification constitutes a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position is considered frivolous.").

"A position can be justified even though it is not correct, and . . . can be substantially (i.e. for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  Pierce, 482 U.S. at 566 n.2.  In order to show that its position was substantially justified, the government must demonstrate:  (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.  Morgan, 142 F.3d at 684.

If the case turns on a question of law, the government can show that its position was

substantially justified even if its legal argument is ultimately rejected, if it can show that the question was close or unsettled.  Edge v. Schweiker, 814 F.2d 125, 128 (3d Cir. 1987); Washington v. Heckler, 756 F.2d 959, 961-62 (3d Cir. 1985).  However, "when the government's legal position 'clearly offends established precedent . . . its position cannot be said to be substantially justified.' "  Washington, 756 F.2d at 961-62; accord Golembiewski v. Barnhart, 382 F.3d 721, 724-25 (7th Cir. 2004) (government lacked substantial justification where its defense of the ALJ contradicted "clear and long judicial precedent").

## III. DISCUSSION

### A. *Background*

The EAJA was enacted to address the concern that "the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation. . . ."  Morgan, 142 F.3d at 683 (quoting Pierce, 487 U.S. at 575 (Brennan, J., concurring in part and concurring in the judgment)); see also Commissioner, INS v. Jean, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.").  To help ensure that the cost of litigation does not deter meritorious suits challenging federal government action, the EAJA presumes an award of attorney's fees to a prevailing party other than the United States, but allows the government to avoid this fee award if it can show that its position was substantially justified.

"Determining whether the government's position is substantially justified for the resolution of an EAJA claim has proved to be an issue of considerable conceptual and practical

difficulty." Morgan, 142 F.3d at 685 (citations omitted).  Of course, the mere fact that the ALJ agreed with the Commissioner that Plaintiff was not entitled to benefits does not, in itself, mean that the Commissioner was substantially justified in defending the ALJ's decision before this Court.  If that were so, no plaintiff could ever obtain an EAJA award for obtaining a remand of an erroneous ALJ decision.  See Pierce, 487 U.S. at 569 ("Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified.  Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.").

Likewise, the fact that the magistrate found the ALJ's decision erroneous in several respects and that it was ultimately remanded without any objection from the Commissioner does not, in and of itself, mean that the Commissioner's position lacked substantial justification. Thus, while I may certainly consider the views of other judges in determining the question of substantial justification, they serve as a starting point rather than an end to the inquiry. See Pierce, 487 U.S. at 568 (views of other courts on the merits of a case are relevant as "objective indicia" of whether the government's position was substantially justified).  Thus, I turn to the substance of the ALJ's opinion and the magistrate's R&R to determine whether the Commissioner's defense of the ALJ's decision had:  (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.  Morgan, 142 F.3d at 684.

**B. *Proper Scope of the Inquiry***

As a threshold question, I must consider the correct level of generality at which to decide

whether the Commissioner's position was substantially justified – an issue on which courts have expressed differing views.  The Commissioner urges that I look to whether the government's position was substantially justified in the case as a whole.  See, e.g., Jackson v. Chater, 94 F.3d 274, 279-80 (7th Cir. 1996) ("being incorrect on one point does not translate into lacking substantial justification for one's litigation position during the entirety of a civil action"); Roanoke River Basin Assoc. v. Hudson, 991 F.2d 132, 139 (4th Cir. 1993) ("[W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation.").  Plaintiff, on the other hand, argues that whether the Commissioner was substantially justified in opposing a remand of a social security case must be determined solely with respect to the issue(s) on which the remand was based.  See Flores v. Shalala, 49 F.3d 562, 572 (9th Cir. 1995) ("The district court erroneously looked to the reasonableness of the Secretary's position on the ultimate question of disability.  Instead, it should, at least initially, have inquired whether the Secretary was substantially justified in her position with respect to the procedural errors that led to the remand."); Lewis v. Barnhart, 281 F.3d 1081, 1085 (9th Cir. 2002) (claimant is entitled to fees unless government's position is substantially justified with respect to the issue on which the court based its remand).[10]

_____

[10] There is also an intermediate position that neither party has advocated.  At least two circuits have expressed approval of *partial* fee awards under the EAJA where some, but not all of the government's claims against a litigant are without substantial justification, see Alphin v. National Transp. Safety Bd., 839 F.2d 817, 822 (D.C. Cir. 1988), or where the government's position, though initially justified, subsequently becomes untenable, see Quality C.A.T.V., Inc. v. N.L.R.B., 969 F.2d 541, 545 (7th Cir. 1992).  However, I have found no case finding a partial award proper where a social security/disability claimant, though obtaining a remand of the case,

No Supreme Court or Third Circuit case explicitly states what a court's proper focus should be when considering whether the Commissioner was substantially justified in opposing a social security remand. The Plaintiff's proposed approach is persuasive insofar as it directs the focus away from whether the Commissioner's position was substantially justified on the ultimate, unresolved question of whether a claimant is entitled to benefits. Under the Supreme Court's decision in Shalala v. Schaefer, 509 U.S. 292 (1993), parties may obtain EAJA fees as soon as the case is remanded, when it is still unclear whether they will ultimately obtain benefits. Indeed, parties may be entitled to fees from the remand stage even though they are eventually found *not to be disabled*. See Corbin v. Apfel, 149 F.3d 1051, 1053 (9th Cir. 1998). Because the claimant is thus a "prevailing party" only insofar as she has obtained a remand of the case, it makes sense to inquire, for purposes of the EAJA, whether the Commissioner was substantially justified in opposing the remand – not on the ultimate question of disability.

Plaintiff seems to go further, however, and assert that in determining whether the Commissioner was substantially justified in opposing the remand, I should consider the Commissioner's position only with respect to those arguments for remand on which the Plaintiff prevailed. See Flores, 49 F.3d at 572 (court should focus only on whether Commissioner was substantially justified "with respect to the procedural errors that led to remand"). However, the Fourth and Seventh Circuits have explicitly rejected this position, holding that courts must look at the entirety of the government's position in a litigation when determining substantial justification. See Jackson, 94 F.3d at 279-80; Roanoke, 991 F.2d at 139. Moreover, the Supreme Court has noted in dicta that "[w]hile the parties' postures on individual matters may be

_____

does not prevail on every argument in favor of remand.

11

more or less justified, the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as atomized line-items."[11]  496 U.S. at 161-62.  The Ninth Circuit also seems to have rejected the most extreme form of Plaintiff's position, holding that courts need not focus myopically on the Commissioner's defense of the ALJ's *procedural* errors leading to the remand but may look more broadly at the Commissioner's arguments for why the ALJ was substantively correct.[12]  See 281 F.3d at 1085-86.

     The Fourth Circuit's approach in <u>Roanoke</u> is instructive.[13]  There, the court adopted a "totality of the circumstances" test for substantial justification, which looks at both the magnitude of the error in the government's position and its materiality to the litigation:

> Thus a more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's 'position' in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not. Similarly, a broader government position that, considered in a vacuum, would not be clearly egregious might still, in the overall context of the case, constitute an unreasonable position because of its impact.  Although an unreasonable stance taken on a single issue may thus undermine the substantial justification of the government's position, that question can be answered only by looking to the stance's effect on the entire civil action.

991 F.2d at 139.  This approach allows a plaintiff to obtain fees even where he prevails only on

---

[11] It has been recognized that "[t]he holding in <u>Jean</u> . . . did not squarely resolve how to determine whether the government's position in the action was substantially justified when it loses on only one issue."  <u>Roanoke</u>, 991 F.2d at 138.

[12] The majority in <u>Lewis</u> rejected the dissent's argument that by failing to focus solely on the procedural errors leading to the remand, the majority was ignoring <u>Flores</u> and evaluating the Commissioner's position on the ultimate question of disability.  See 281 F.3d at 1085-86.

[13] The Third Circuit has referred to <u>Roanoke</u>'s discussion of "the extent to which the EAJA inquiry focuses only upon the narrow issue on which a party prevailed or upon the entire litigation of which that issue may have been only a small part."  <u>Morgan</u>, 142 F.3d at 686 n.30.

one of many claims or theories, if the government's position on that issue was significantly

erroneous and had a significant impact on the litigation.

I adopt a version of the Fourth Circuit's approach that appears to be a middle ground.

While I will not consider whether the Commissioner's position was substantially justified with

respect to the ultimate question of whether Plaintiff is entitled to benefits, I will consider the

Commissioner's position on all of the arguments both for and against remanding the case.

### C. *Whether the Commissioner's Position Was Substantially Justified*

Looking at the totality of the Commissioner's opposition to the remand, I find that the

government has not met its burden of showing that the Commissioner's position was

substantially justified.  Significantly, the Commissioner defended the ALJ's failure to include

several of Plaintiff's impairments in the hypothetical posed to the vocational expert, a failure that

constituted reversible error.  As Judge Wells noted, Third Circuit law is clear that in order for an

ALJ to rely on a VE's answer to a hypothetical question, the hypothetical must include all of a

claimant's impairments:

> Discussing hypothetical questions posed to vocational experts, we have said that
> while the ALJ may proffer a variety of assumptions to the expert, the vocational
> expert's testimony concerning a claimant's ability to perform alternative
> employment may only be considered for purposes of determining disability if the
> question accurately portrays the claimant's individual physical and mental
> impairments.  A hypothetical question posed to a vocational expert must reflect all
> of a claimant's impairments.  Where there exists in the record medically
> undisputed evidence of specific impairments not included in a hypothetical
> question to a vocational expert, the expert's response is not considered substantial
> evidence.

Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (citations omitted); see also  Chrupcala v.

Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.

1984).  Moreover, the Commissioner's own regulations require the Commissioner to "conduct a

particularized assessment of an individual's ability in evaluating claims of stress and mental

illness."  See Walls v. Barnhart, 2002 WL 485641, at *19 (E.D. Pa. Mar. 28, 2002).  SSR 85-15

states:

> Because response to the demands of work is highly individualized, the skill level
> of a position is not necessarily related to the difficulty an individual will have in
> meeting the demands of the job.  A claimant's condition may make performance
> of an unskilled job as difficult as an objectively more demanding job.  For
> example, a busboy need only clear dishes from tables.  But an individual with a
> severe mental disorder may find unmanageable the demands of making sure that
> he removes all the dishes, does not drop them, and gets the table cleared promptly
> for the waiter or waitress.  Similarly, an individual who cannot tolerate being
> supervised may not be able to work even in the absence of close supervision; the
> knowledge that one's work is being judged and evaluated, even when the
> supervision is remote or indirect, can be intolerable for some mentally impaired
> persons.  *Any impairment-related limitations created by an individual's response*
> *to demands of work, however, must be reflected in the RFC assessment.*

Id. (emphasis added).

Here, the hypothetical posed to the VE did not specifically mention mental impairments

such as Plaintiff's responses to stress, his difficulties controlling his anger and emotions, and his

inability to respond appropriately to changes.  Nor did the hypothetical include the Plaintiff's use

of a cane as a result of his peripheral neuropathy.  Thus, the VE's assessment of Plaintiff's ability

to perform his past work or other, similar work was based on a flawed hypothetical.

Furthermore, the ALJ did not engage in the "particularized assessment" of the impact of

Plaintiff's mental limitations on his ability to do alternative work, as required by SSR 85-15.

In opposing the remand, the Commissioner stated that "the ALJ fully considered

Plaintiff's ability to deal with work stress in assessing his mental residual functional

capacity" as required by Third Circuit law and SSR 85-15.  However, as Judge Wells found, that

was simply not the case.  The Commissioner further argued that the ALJ need not have included

Plaintiff's mental limitations in her hypotheticals because there was no evidence of such

limitations other than Plaintiff's own testimony and the assessments of Plaintiff's therapists,

which the Commissioner claimed the ALJ had discredited.  For various reasons, this argument

has neither a reasonable basis in fact nor a reasonable basis in law.

First of all, the Commissioner's argument that the ALJ rejected Plaintiff's claims of

mental impairment is belied by the ALJ's own decision, in which she states that although not

disabling, "the claimant's mental impairment is severe."  (R.25.)  The ALJ specifically included

depression as one of Plaintiff's severe impairments.  (R.21.)  In fact, the ALJ explicitly disagreed

with the State Agency psychologist's opinion that Plaintiff's mental impairments were *not* severe

and caused only mild difficulties in maintaining social functioning and in maintaining

concentration, persistence, or pace.  (Id.; R.204.)  Instead, the ALJ concluded that "the claimant's

mental impairment causes mild restrictions in activities of daily living, *moderate* difficulties in

maintaining social functioning, [and] *moderate* difficulties in maintaining concentration,

persistence, or pace . . . ."  (Id. (emphasis added).)

Furthermore, the ALJ did not wholly discredit the testimony of Plaintiff's therapists as

the Commissioner suggests.  Rather, the ALJ merely declined to give these opinions controlling

weight on the question of whether Plaintiff's mental impairments met or equaled in severity

Listing 12.04, Affective Disorder.  (R.22.)  Instead, the ALJ found these opinions entitled to

"limited" weight, and appears to have relied on them in finding that Plaintiff suffered from

severe, though not disabling mental limitations.  (Id.)   Accordingly, Judge Wells did not even

address the Commissioner's argument that the ALJ need not have considered Plaintiff's mental

limitations because she had discredited the testimony of Plaintiff's therapists.  In light of the

ALJ's specific finding that Plaintiff's mental difficulties were severe, this argument was

unreasonable as a matter of fact and law.

The ALJ found that Plaintiff did suffer from severe mental limitations.  As Judge Wells

noted, the record supports and the ALJ accepted that Plaintiff has difficulty controlling his

emotions, anger issues, and trouble getting along with supervisors and co-workers.  However,

"[t]he ALJ's determination that Plaintiff suffers 'mild restrictions in activities of daily living,

moderate difficulties in maintaining social functioning and moderate difficulties in maintaining

concentration' is not properly reflected in her hypothetical question to the VE."  (R&R at 24.)

The ALJ did not address with specificity all of the mental impairments she found credible in her

decision, and did not conduct a particularized inquiry of how those impairments would limit

Plaintiff's ability to perform alternative work, as required by SSR 85-15.  The ALJ only asked

the VE to assume an individual that could "understand, remember, and follow simple

instructions," have only "occasional changes in the work place," and have only "occasional

conversations and interpersonal interactions with employees."  (R.75.)  This was not sufficient to

encompass all of the serious mental impairments the ALJ believed Plaintiff to exhibit.  See

Burns, 312 F.3d at 123 (totality of claimant's mental impairments was not sufficiently reflected

in hypothetical to VE that assumed claimant could perform "simple, repetitive one, two-step

tasks").

It is well settled in the Third Circuit that "[a] hypothetical question must reflect all of a

claimant's impairments that are supported by the record; otherwise the question is deficient and

the expert's answer to it cannot be considered substantial evidence."  Chrupcala, 829 F.2d at

1276 (citing <u>Podedworny</u>, 745 F.2d at 218).  Likewise, there is no question that SSR 85-15

requires a careful investigation of the types of jobs a claimant can and cannot do given his or her

mental limitations.  Thus, this is not a case where the Commissioner's position, though incorrect,

involved a close or unsettled question of law.  <u>See</u> <u>Edge</u>, 814 F.2d at 128.  "[W]hen the

government's legal position 'clearly offends established precedent . . . its position cannot be said

to be substantially justified.' "  <u>Washington</u>, 756 F.2d at 961-62; <u>Golembiewski</u>, 382 F.3d at

724-25.  "To be 'substantially justified' means, of course, more than merely undeserving of

sanctions for frivolousness; that is assuredly not the standard for Government litigation of which

a reasonable person would approve."  <u>Pierce</u>, 487 U.S. at 566.

It is true that Judge Wells found that the Commissioner properly defended against two of

Plaintiff's claims of error in the ALJ's decision:  the failure to give more weight to the testimony

of Plaintiff and his treating physicians and the failure to seek out additional medical expert

testimony.  However, in his appeal to this Court, it behooved Plaintiff to raise *all* nonfrivolous

grounds for reversal or remand, and it is natural that some would be less persuasive than others.[14]

The two claims of error on which the Commissioner prevailed were arguments for why

Plaintiff's impairments met or equaled a listed impairment – a question on which Plaintiff faced

an uphill battle at best.  The disposition of Plaintiff's claim for benefits did not ultimately turn on

---

[14] Indeed, Plaintiff's attorney had an ethical *obligation* to raise all plausible theories on his client's behalf, and the EAJA surely does not require him to do so only at the peril of losing a statutory entitlement to fees.  By contrast, the EAJA specifically contemplates that the Commissioner will risk paying attorney's fees for pursuing positions that, while not frivolous, are not substantially justified.  The very language of the EAJA is not symmetrical as between the government and private litigants in that it provides for fee awards only to prevailing parties "other than the United States."  Of course, this asymmetry makes sense given that the purpose of the EAJA was "to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions."  <u>Jean</u>, 496 U.S. at 163.

whether he met a listed impairment, but on whether he had the residual functional capacity to perform his past work or alternative work.  It is the ALJ's errors on *this* question, and the Commissioner's defense of them, that constituted "the nub of the remand proceedings."  <u>Lewis</u>, 281 F.3d at 1086.  Because it was on this crucial aspect of the remand litigation that the Commissioner's position was least defensible, I find that the government has failed to meet its burden of proving that the Commissioner's position in opposing the remand was substantially justified.

## IV. CONCLUSION

Because the government has not met its burden of proving that the Commissioner was substantially justified in defending the ALJ's decision, which the magistrate found to have been erroneous under clear Third Circuit precedent, I will grant Plaintiff's application for attorney's fees under the EAJA.

**ORDER**

**_____AND NOW_**, this __10TH_____ day of May, 2006, upon consideration of Plaintiff's

Application for Attorney Fees Under the Equal Access to Justice Act (Doc. # 14) and the briefs

in support thereof and in opposition thereto, it is **ORDERED** that the Application is **GRANTED**

and Plaintiff is awarded $3,858.41 in fees.

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

O:\ABB 2006\Corona opinion 5_10_06.wpd